IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

**FILED**

JUN 29 2026

JOAN KANE, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____, DEPUTY

KONRAD TADEUSZ PATRZALEK,                    )

Plaintiff,                                   )

v.                                           )

DEPARTMENT OF GOVERNMENT EFFICIENCY ("DOGE"),    )

Defendant.                                   )

                                             )

Case No. CIV-26-1597-J                       )

                                             )

COMPLAINT

**I. PARTIES**

1. "Plaintiff Konrad Tadeusz Patrzalek, also known as ('a/k/a') kornbread, Kornelius Kong, and konqueror ("Plaintiff"), is a natural person and resident of Oklahoma."

2. Plaintiff is the developer of the UNIKORNAIO Global Jurisdiction Framework, a body of investigative, governance, regulatory, enforcement, and economic-correction work developed through research, investigation, regulatory advocacy, documentation, and analysis relating to Web3 ecosystems, digital asset regulation, capital flight, economic transparency, and related matters.

3. Defendant Department of Government Efficiency ("DOGE") is a federal agency.

## II. JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action presents federal questions arising under the Constitution and laws of the United States, including claims concerning Plaintiff's rights under the First Amendment to the United States Constitution.

5. This Court further has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) and (4) because Plaintiff seeks redress for the deprivation of rights, privileges, and immunities secured by the Constitution and laws of the United States.

6. This Court is authorized to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7. To the extent Plaintiff asserts claims arising under state law, including unjust enrichment, quantum meruit, misappropriation, and related claims, this Court has

supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because such claims arise from the same nucleus of operative facts as the federal claims asserted herein.

8. Personal jurisdiction is proper under 12 Okla. Stat. § 2004(F) because Defendants' alleged conduct has substantial connections with Oklahoma, Plaintiff's alleged injuries were suffered, at least in substantial part, within this District, and the exercise of jurisdiction is consistent with due process.

9. Venue is proper in the United States District Court for the Western District of Oklahoma pursuant to 28 U.S.C. § 1391 because Plaintiff resides within this District and a substantial part of the events, omissions, research activities, publications, investigative work, and related conduct giving rise to the claims occurred within this District.

## III. FACTUAL BACKGROUND

**A. Development of the UNIKORNAIO Global Jurisdiction Framework**

10. Beginning in or around 2023, Plaintiff conducted investigations into cybercrime, digital asset exploitation, capital flight, financial misconduct, human trafficking, and related unlawful activities occurring within Web3 ecosystems and associated digital platforms.

11. Through these investigations, Plaintiff identified significant regulatory gaps, enforcement deficiencies, governance failures, jurisdictional challenges, and economic vulnerabilities affecting digital assets and emerging technologies.

12. As a result of these investigations, Plaintiff developed the UNIKORNAIO Global Jurisdiction Framework ("UNIKORNAIO"), a framework addressing criminal activity, digital-asset regulation, capital flight, governance failures, economic transparency, and accountability within Web3 ecosystems. The framework included investigative methodologies, regulatory analyses, governance concepts, enforcement mechanisms, and proposed corrective measures relating to digital-asset markets and emerging technologies.

**B. Regulatory Research and Advocacy**

13. During the development of the UNIKORNAIO Framework, Plaintiff researched digital-asset regulation, financial governance, enforcement policy, legislative initiatives, and regulatory structures affecting Web3 technologies, including issues concerning capital flight, cybercrime, investor protection, and Web3 governance.

14. AttAched as Exhibit 1 is a representative regulatory-advocacy communication prepared by Plaintiff concerning cybersecurity, digital-asset regulation, market manipulation, investor protection, blockchain governance, and related issues

affecting the Web3 ecosystem. Plaintiff offers Exhibit 1 as contemporaneous evidence of his regulatory advocacy, public reporting efforts, and communications concerning accountability, transparency, oversight, and enforcement within digital-asset markets.

## C. Expansion of the Framework During 2024

15. Throughout 2024, Plaintiff expanded the UNIKORNAIO Framework through ongoing research, investigative reporting, analysis, documentation, and policy development.

16. The framework evolved to include crime definitions, investigative methodologies, jurisdictional concepts, governance proposals, enforcement mechanisms, accountability systems, and economic-correction methodologies addressing conduct within Web3 ecosystems.

17. Plaintiff developed written materials concerning capital flight, economic transparency, market manipulation, digital fraud, financial exploitation, money laundering, human trafficking, digital political manipulation, governance failures, and related regulatory and enforcement issues.

18. The exhibits that follow provide representative and contemporaneous evidence of the development, documentation, implementation, public disclosure, technical complexity, and alleged interference, disruption, and retaliatory conduct

encountered during the creation and advancement of the UNIKORNAIO Framework throughout 2024.

**D-1. Exhibit 2A – UNIKORNAIO Web3 Framework**

19. Attached as Exhibit 2A is a representative collection of UNIKORNAIO materials developed by Plaintiff during 2024, including Web3 crime definitions, investigative methodologies, governance concepts, regulatory proposals, capital-flight analyses, proof-of-work documentation, economic-transparency concepts, accountability mechanisms, and governmental-efficiency methodologies relating to waste, fraud, abuse, and institutional oversight.

20. Plaintiff offers Exhibit 2A as contemporaneous evidence of the framework's existence, development, organization, implementation, and public documentation prior to the 2024 election cycle. Plaintiff further alleges that Exhibit 2A contains concepts, methodologies, governance proposals, accountability mechanisms, and policy-development materials that were later utilized, adapted, incorporated, or otherwise derived value from by persons associated with Defendant.

**D-2. Exhibit 2B – August 17, 2024 Probable Cause Affidavit Regarding Capital Flight and Inflation**

21. Attached as Exhibit 2B is a Probable Cause Affidavit for Concealment of Critical Economic Information prepared by Plaintiff on August 17, 2024. The

affidavit addresses issues relating to capital flight, inflation, digital-asset regulation, economic transparency, and related economic matters. The affidavit focused primarily on Elon Musk and Plaintiff's analysis of issues associated with those subjects, while also discussing other individuals, entities, organizations, and affiliated interests that Plaintiff believed were connected to the same economic and regulatory concerns, including persons and organizations identified in the FIT21 Coalition (Exhibit 2D) and Exhibit D.O.G.E-COI. Plaintiff offers Exhibit 2B as contemporaneous evidence of the economic analyses, regulatory observations, investigative findings, and policy recommendations that were later incorporated into the UNIKORNAIO Framework prior to the 2024 election cycle.

**D-3. Exhibit 2C – August 2024 Incident Statement and Alleged Retaliatory Conduct**

22. Attached as Exhibit 2C is an incident statement prepared by Plaintiff concerning events occurring on or about August 18, 2024, together with related events relevant to the allegations set forth in this Complaint.

23. Exhibit 2C documents an incident that resulted in Plaintiff's arrest after Plaintiff broke a window at Automotive MD. Plaintiff acknowledges responsibility for the property damage and resulting arrest but alleges that the incident occurred during the first period in which he believed he was experiencing harassment,

interference, manipulation, retaliation, or other conduct involving covert technologies unknown to him at the time.

24. Plaintiff alleges that these events occurred while he was actively engaged in investigations concerning Web3 ecosystems, digital assets, capital flight, financial misconduct, cybersecurity issues, human trafficking, and related matters later incorporated into the UNIKORNAIO Framework.

25. Exhibit 2C further documents Plaintiff's concerns regarding alleged interference and retaliation during the development of the UNIKORNAIO Framework, including alleged contact with Oklahoma officials concerning Plaintiff before Defendant acquired governmental authority. Plaintiff offers Exhibit 2C as contemporaneous evidence regarding the alleged interference and retaliatory conduct described in this Complaint.

**D-4. Exhibit 2D – Investigative Reports Concerning Digital Asset Regulation, Capital Flight, Venture-Capital Activity, and Related Matters**

26. Attached as Exhibit 2D is a representative collection of investigative reports, incident reports, analyses, affidavits, publications, and related materials prepared by Plaintiff during the relevant period.

27. Exhibit 2D documents Plaintiff's investigative activities concerning digital-asset regulation, capital flight, venture-capital activity, lobbying efforts, regulatory

influence, economic transparency, and related governance matters. It further documents individuals, organizations, investors, policy advocates, regulatory developments, and market participants that Plaintiff believed were relevant to those issues.

28. Plaintiff alleges that certain individuals, entities, networks, and interests identified through the investigative materials contained in Exhibits 2B and 2D later became associated with, connected to, supportive of, or involved with Defendant DOGE. Plaintiff further alleges that Exhibit D.O.G.E.-COI provides additional evidence concerning alleged personnel overlap, continuity of relationships, advisory participation, venture-capital involvement, and institutional continuity.

29. Plaintiff offers Exhibit 2B, Exhibit 2D, together with Exhibit D.O.G.E.-COI, as contemporaneous evidence of the scope of his investigative activities and the alleged relationship between subjects identified in his work and persons or networks later associated with Defendant.

**D-5. Exhibit 2E – OSBI Submission**

30. Attached as Exhibit 2E is a compilation of theoretical investigative materials, crime definitions, incident reports, probable-cause affidavits, regulatory observations, and Web3-governance materials prepared by Plaintiff during 2024 and submitted to the Oklahoma State Bureau of Investigation ("OSBI"). Plaintiff

offers Exhibit 2E as contemporaneous evidence of the development, authorship, public disclosure, and governmental submission of the UNIKORNAIO Framework. Plaintiff alleges that Exhibit 2E constituted the principal theoretical investigative component of the framework that Defendant and associated persons derived strategic, political, institutional, regulatory, and economic value from the work contained therein. Plaintiff further alleges that such value contributed to political advantage, electoral success, and governmental authority ultimately benefiting President Donald J. Trump and persons associated with Defendant.

**D-6. Exhibit 2F – Prior Documentation of Web3/AI Bubble Conditions, Inflation, Capital Flight, and FIT21 Corrective Measures**

31. Attached as Exhibit 2F are investigative materials, analyses, reports, publications, screenshots, and related documentation prepared or compiled by Plaintiff concerning Web3 and AI-sector valuations, capital concentration, inflationary pressures, economic transparency, digital-asset markets, and related public-policy concerns.

32. Plaintiff offers Exhibit 2F as contemporaneous documentary evidence demonstrating that Plaintiff had developed, documented, and publicly disclosed analyses concerning Web3 and AI-sector valuations, capital flight, inflation,

economic transparency, digital-asset regulation, FIT21-related reforms, and related public-policy issues prior to and during the 2024 election cycle.

**E. Publication, Disclosure, Public Advocacy, and Reporting Activities**

33. Throughout 2024, Plaintiff developed, documented, published, and advanced portions of the UNIKORNAIO Framework through public communications, investigative reports, social-media publications, regulatory advocacy efforts, affidavits, and submissions to law enforcement.

34. Plaintiff publicly reported on, investigated, and advocated regarding matters of public concern, including capital flight, digital-asset regulation, economic transparency, inflation, governmental accountability, waste, fraud, abuse, and related issues. As part of these efforts, Plaintiff submitted investigative materials and supporting evidence to law-enforcement authorities, including Exhibit 2B to a member of the Oklahoma City Police Department ("OKCPD") and Exhibit 2E to the Oklahoma State Bureau of Investigation ("OSBI").

35. During 2024, Plaintiff identified perceived gaps in digital-asset regulation, institutional understanding of digital assets, and the application of existing laws to blockchain-based misconduct. In response, Plaintiff developed and documented portions of a framework intended to assist in identifying, categorizing, and communicating Web3-related misconduct across jurisdictions.

36. Plaintiff alleges that these activities constituted protected speech, investigative reporting, public advocacy, petitioning of government officials, and commentary on matters of public importance protected by the First Amendment to the United States Constitution.

**F. Defendant's Access to Plaintiff's Work, Knowledge of Identified Risks, and Alleged Benefit**

37. Plaintiff alleges that the UNIKORNAIO Framework, including the materials contained within Exhibits 1, 2A, 2B, 2D, 2E, and 2F, identified risks relating to capital flight, economic transparency, digital-asset regulation, governance failures, regulatory deficiencies, inflation, and related economic and public-policy concerns prior to and during the 2024 election cycle.

38. Plaintiff further alleges that these findings, analyses, and proposed corrective measures were publicly disclosed through publications, investigative reports, social-media communications, regulatory advocacy efforts, and law-enforcement submissions. By virtue of such public dissemination, Plaintiff alleges that Defendant and persons associated with Defendant had access to the UNIKORNAIO Framework and the risks, findings, recommendations, and policy concepts documented therein.

39. Plaintiff further alleges that the subject matter addressed within the UNIKORNAIO Framework substantially overlapped with issues later associated with governmental-efficiency initiatives, inflation, economic reform, digital governance, economic transparency, and public-policy modernization efforts. Plaintiff alleges that Defendant and persons associated with Defendant knew, or reasonably should have known, that Plaintiff's research identified digital-asset regulation "FIT21"-related reforms as important components of meaningful economic reform in solving inflationary burdens and addressing criminal misconduct in Web3.

40. Plaintiff alleges that Defendant and persons associated with Defendant derived strategic, political, institutional, regulatory, and economic value from Plaintiff's investigative work, analyses, methodologies, governance concepts, accountability mechanisms, regulatory observations, policy proposals, and other materials embodied within the UNIKORNAIO Framework. Plaintiff further alleges that such value contributed to political and institutional advantages, including electoral success and the subsequent acquisition of governmental authority, influence, policy-development functions, institutional access, and related roles associated with the United States Digital Service ("USDS") and related governmental functions.

41. Plaintiff further alleges that, despite publicly developing, documenting, disclosing, and advancing these materials, he was excluded from participation, attribution, recognition, advisory involvement, implementation opportunities, and deployment opportunities following Defendants' alleged use of the work.

**G. Continuity of Conduct Before and After Acquisition of Governmental Authority**

42. Attached as Exhibit D.O.G.E.-COI is a representative collection of publicly available reports, analyses, publications, and related materials concerning personnel overlap, venture-capital participation, private-sector influence, continuity of actors, and governmental activities involving the Department of Government Efficiency ("DOGE").

43. Plaintiff alleges that the exclusion, marginalization, denial of participation opportunities, denial of attribution, denial of recognition, and other adverse conduct described herein began before Defendant acquired governmental authority and continued after Defendant and associated actors acquired or exercised governmental authority.

44. Plaintiff further alleges that individuals, advisors, affiliates, organizations, and networks involved in the pre-governmental conduct subsequently became

associated with governmental authority, governmental functions, policy-development activities, and related governmental responsibilities.

45. Plaintiff alleges that the post-acquisition conduct constituted governmental action, action under color of law, or conduct sufficiently connected to governmental authority to implicate constitutional protections. Plaintiff further alleges that the individuals and entities involved in the pre-governmental conduct became sufficiently entwined with governmental authority such that their conduct is attributable to the State under the principles recognized in *Brentwood Academy v. Tennessee Secondary School Athletic Association, 531 U.S. 288 (2001)*.

46. Plaintiff alleges that the post-acquisition adverse actions were motivated, in whole or in part, by Plaintiff's protected speech, investigative reporting, regulatory advocacy, public disclosures, law-enforcement submissions, petitioning activity, and criticism concerning matters of public concern, including capital flight, digital-asset regulation, governmental accountability, economic transparency, waste, fraud, abuse, and related issues.

## IV. CAUSES OF ACTION

## COUNT I – UNJUST ENRICHMENT

47. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

48. Plaintiff alleges that Defendant derived value from the UNIKORNAIO Framework and related materials under circumstances making it inequitable for Defendant to retain such benefits without providing restitution or other equitable relief.

## COUNT II – QUANTUM MERUIT

49. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

50. Plaintiff alleges that Defendant accepted, retained, utilized, or otherwise benefited from Plaintiff's work and that Plaintiff reasonably expected compensation, participation, recognition, or other value if such work were used. Plaintiff alleges that Defendant knew or reasonably should have known of that expectation.

51. As a direct and proximate result, Plaintiff suffered damages, including lost opportunities, uncompensated services, and loss of recognition.

## COUNT III – DECLARATORY JUDGMENT

52. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

53. An actual and present controversy exists concerning the development, authorship, attribution, recognition, use, and alleged benefit derived from the UNIKORNAIO Framework and associated materials.

54. Plaintiff seeks a declaration concerning the authorship, development, attribution, recognition, and alleged use of the UNIKORNAIO Framework and the relationship between Plaintiff's work and the benefits allegedly obtained by Defendant.

## COUNT IV – MISAPPROPRIATION

55. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

56. Plaintiff alleges that Defendant utilized, adapted, promoted, relied upon, incorporated, or otherwise derived value from Plaintiff's work while excluding Plaintiff from attribution, recognition, participation, advisory involvement, implementation and deployment opportunities or related benefits.

57. Plaintiff alleges that such conduct entitles him to appropriate legal and equitable relief.

## COUNT V – FIRST AMENDMENT RETALIATION AND VIEWPOINT DISCRIMINATION

58. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

59. Plaintiff alleges that the conduct described in Section G demonstrates that the retaliatory conduct directed toward Plaintiff began before governmental authority was obtained and continued after Defendant and associated actors acquired or exercised governmental authority, thereby constituting governmental action for purposes of Plaintiff's First Amendment claims.

60. Plaintiff engaged in protected speech, investigative reporting, public disclosures, regulatory advocacy, law-enforcement reporting, publication, petitioning activity, and public commentary concerning matters of public concern, including capital flight, digital asset regulation, economic transparency, inflation, governmental accountability, waste, fraud, abuse, and related issues.

61. Plaintiff alleges that, following these activities, he experienced exclusion, marginalization, denial of participation opportunities, denial of recognition and attribution, reputational harm, economic harm, and other adverse consequences described throughout this Complaint.

62. Plaintiff further alleges that the adverse actions described herein were motivated, in whole or in part, by his protected speech, investigative reporting,

public disclosures, regulatory advocacy, law-enforcement reporting, petitioning activity, and criticism concerning matters of public concern.

63. As a direct and proximate result, Plaintiff suffered economic harm, professional harm, reputational injury, loss of opportunities, loss of recognition, loss of participation opportunities, and other damages to be established through discovery and further proceedings.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and grant the following relief:

A. A declaration recognizing Plaintiff's authorship, development, documentation, publication, disclosure, and advancement of the UNIKORNAIO Framework and associated materials;

B. Declaratory relief concerning the relationship between Plaintiff's work and the benefits allegedly obtained by Defendant;

C. Equitable relief addressing Plaintiff's alleged exclusion from attribution, recognition, participation, advisory involvement, implementation and deployment opportunities, governance roles, policy-development activities, and related benefits associated with the development, implementation and deployment, use, adoption, and advancement of the UNIKORNAIO Framework and related materials.

D. Restitution, disgorgement, compensation, quantum meruit recovery, unjust-enrichment recovery, and other equitable remedies authorized by law;

E. Declaratory and equitable relief concerning the First Amendment retaliation and viewpoint-discrimination claims asserted in this Complaint;

F. Costs, fees, interest, and such further relief as may be available under applicable law; and

G. Such other and further legal, equitable, declaratory, or appropriate relief as the Court deems just and proper.

## VI. JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

*June 29th, 2026*

Date: ~~June 05, 2026~~

**Konrad Tadeusz Patrzalek**
10304 NW 17th St
OKC, OK 73127
konrad.patrz@gmail.com
405-694-5210